IN THE UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ALABAMA
NORTHEASTERN DIVISION

| | |
|---|---|
| **TAMMIE G. BLACK,** | ) |
| | ) |
| **Plaintiff,** | ) |
| | ) |
| v. | ) Case No. 5:09-cv-01811-JEO |
| | ) |
| **MAPCO EXPRESS, INC., d/b/a** | ) |
| **Favorite Markets,** | ) |
| | ) |
| **Defendant.** | ) |

## MEMORANDUM OPINION

The plaintiff, Tammie G. Black (hereinafter "Plaintiff"), filed the above-entitled action on August 18, 2009, in the Madison County Circuit Court. The case was removed to this court on September 10, 2009. (Notice of Removal, doc. 1). In her Complaint, Plaintiff asserts counts against Mapco Express, d/b/a "Favorite Markets" (hereinafter "Defendant"), for negligence and wantonness in connection with injuries she suffered while patronizing Defendant's store in August 2007. (Doc. 1, "Notice of Removal," pp. 9-12).[1] The parties have consented to the jurisdiction of the undersigned pursuant to 28 U.S.C. § 636(c). (Doc. 36). Before the court is Defendant's Motion for Summary Judgment (doc. 31), filed on August 9, 2010. The motion has been fully briefed and is ready for disposition. Upon consideration, the motion is due to be granted.

---

[1] References herein to "Doc.___" are to the document number assigned by the Clerk of the Court in the court file.

I.      **FACTUAL AND PROCEDURAL HISTORY**[2]

Plaintiff is a social worker employed with Athens Convalescence Center in Athens, Alabama. (Pl. Dep. at 28). Her job duties include "[h]andling [residents'] behavior problems, counseling residents, doing admissions, assisting [her] supervisor, helping families with Medicaid applications, [and] assisting residents in various ways throughout the facility." (*Id*. at 28-29). She works with residents of various ages and with various illnesses. (*Id*. at 29). At the time of this action, she had held this position for nine years. (*Id*.) She describes her job duties as both "physical and mental" in nature: "I will help residents if they need pushed down the hallways in a wheelchair, if someone is ... going to fall, I'll help stop their motion of falling. I carry lots and lots of charts.... Lots of walking." (*Id*. at 30-31). Plaintiff has never been injured in any job she has held. (*Id*. at 31).

On the afternoon of Sunday, August 19, 2007, Plaintiff alleges that she and her husband, Mr. Brian Black, were traveling from Greenbriar to Huntsville, Alabama, when they decided to stop at a convenience store named "My Favorite Market." The store was, and continues to be at the time of this action, owned and operated by the defendant. Plaintiff and Mr. Black entered the store to purchase soft drinks and use the restroom. Upon entering the store, Plaintiff went directly into the ladies' restroom while Mr. Black shopped for beverages. Before paying for the drinks, he stopped in the men's restroom. (Black Dep. at 17-22).

Plaintiff had not been inside the ladies' restroom on any prior occasion, nor had she heard

---

[2] While neither party disputes the facts contained in the record, the court acknowledges that these are the facts for summary judgment purposes only. They may not be the actual facts. *See Cox v. Administrator U.S. Steel & Carnegie*, 17 F. 3d 1386, 1400 (11th Cir. 1994) ("'[W]hat we state as 'facts' in this opinion for purposes of reviewing the rulings on the summary judgment motion [ ] may not be the actual facts'") (citation omitted). Facts are undisputed unless otherwise noted. Where the facts are in dispute, they are stated in the manner most favorable to the plaintiff. *See Fitzpatrick v. City of Atlanta*, 2 F. 2d 1112, 1115 (11th Cir. 1993).

of any problems with the toilet in that restroom. (Pl. Dep. at 103-04). She entered the ladies' restroom, left her purse either on the sink or hanging on the inside of the doorknob, and proceeded to use the bathroom. She describes the restroom as having a single toilet and one sink to the right of the door. No one was in the restroom when Plaintiff entered it. (*Id*. at 67-68, 80-81).

When she sat down, Plaintiff placed her full weight on the seat of the toilet.[3] She did not notice any problem with the stability of the toilet. A second or two later, Plaintiff "repositioned" herself on the seat to make herself more comfortable. As she shifted on the seat, the toilet rocked toward the right, then to the left, then fell onto its side, smashing into several pieces on the floor. Plaintiff was thrown down, landing on her left arm and suffering injuries to her arm and shoulder. (*Id*. at 68-83).

Meanwhile, Mr. Black left the men's facility and waited outside the door to the ladies' room. He testified that he heard a noise when the toilet landed on the floor, and knocked on the door. Plaintiff opened the door, and appeared disoriented as she collected herself. She told him she had been injured when the toilet fell over. Mr. Black briefly observed the condition of the bathroom but did not enter it, and could not verify whether the toilet was broken. Plaintiff's hands and arms were wet, and water leaked from the toilet onto the floor and under the ladies' restroom door. (Black Dep. at 25-28; Pl. Dep. at 85-86).

No other customers were in the store at the time of this incident. Mr. Black informed the cashier, Felicia McClure, of Plaintiff's injury and requested that she complete an incident report. Ms. McClure placed a "Caution" sign outside the door to the ladies' restroom. Plaintiff and Mr.

---

[3] The record contains no information regarding Plaintiff's height or weight.

Black purchased two beverages, then went outside to the parking lot. (Black Dep. at 28-32).

Plaintiff and Mr. Black sat in their vehicle for a moment without leaving the parking lot. Plaintiff stated that her left arm and shoulder were hurting, and Mr. Black suggested they tell a manager. Upon returning inside the store, Mr. Black told Ms. McClure that Plaintiff was experiencing pain. Ms. McClure suggested that Plaintiff go to an emergency room. No discussion was had whether Defendant would pay for Plaintiff's treatment. Plaintiff and Mr. Black waited inside the store for thirty minutes to speak with a manager. When no manager arrived, Ms. McClure gave Mr. Black the contact information for Lisa Price, the store manager, who was not present when Plaintiff was injured. Mr. Black then drove Plaintiff to the Huntsville Hospital Urgent Care Center in Madison, Alabama, where she was given a sling and prescribed medication for pain. (Black Dep. at 32-45; Pl. Dep. at 88-89, 96-105).

The following morning, Plaintiff called Lisa Price and told her the events of the previous day. Ms. Price informed Plaintiff that she would contact Defendant's corporate office and would call Plaintiff back later that morning. Plaintiff, however, "never heard another word from anyone from Mapco Express." (*Id*. at 102-03).

Plaintiff testified that she had no history of problems with her left arm or shoulder prior to the incident made the basis of this lawsuit. She has since undergone surgery to her shoulder and elbow, and submitted to occupational and physical therapy. She continues to experience pain and is limited to some degree in the use of her left arm. She continues to perform her job duties at the Athens Convalescence Center. While she had medical insurance at the time of her injury, she testified that she and her husband have been liable for portions of her medical care, for which they were continuing to pay at the time of this action. Her Complaint is silent as to damages,

which are not quantified in the record.[4]  (*Id*. at 39-51, 54, 104-41).

Plaintiff filed her Complaint in the Madison County Circuit Court on August 18, 2009. (Doc. 1, Notice of Removal, Exh. A).  Specifically, Plaintiff alleges that Defendant negligently and wantonly failed to maintain the subject toilet in a reasonably safe condition to prevent her from being injured while she attempted to use it.  Defendant removed the case to this court on September 10, 2009, premised on the court's removal jurisdiction pursuant to 28 U.S.C. §§ 1332, 1441, and 1446.  (Doc. 1).  Plaintiff does not contest the removal.

Upon the close of discovery, Defendant filed the pending motion for summary judgment on August 9, 2010, to which the plaintiff responded in opposition on August 30, 2010.  (Docs. 31, 32, respectively).  Defendant did not file a reply brief.  The motion is now under submission.

## II.   STANDARD OF REVIEW

Under FED. R. CIV. P. 56(c), summary judgment is proper "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law."  *See Celotex Corp. v. Catrett*, 477 U.S. 317, 322, 106 S. Ct 2548, 2552, 91 L. Ed. 2d 265 (1986); *Chapman v. AI Transport*, 229 F. 3d 1012, 1023 (11th Cir. 2000).  The party asking for summary judgment always bears the initial responsibility of informing the court of the basis for its motion, and identifying those portions of the pleadings or filings which it believes demonstrate the absence of a genuine issue of material fact. *Celotex*, 477 U.S. at 323, 106 S. Ct. at 2553.  Once the moving party has met its burden, Rule 56(c) requires the nonmoving party to

---

[4] Defendant alleges in its Removal Notice that, before Plaintiff filed her Complaint in state court, she wrote to Defendant in detail about her medical expenses following her injury.  (*See* doc. 1, Exh. B).  In that letter, Plaintiff offered to settle her claims for $175,000.00.  (*Id*.)

go beyond the pleadings and, by its own affidavits, or by the depositions, answers to interrogatories, and admissions on file, designate specific facts showing that there is a genuine issue for trial. *Celotex*, 477 U.S. at 324, 106 S. Ct. at 2553.

The substantive law will identify which facts are material and which are irrelevant. *Chapman*, 229 F. 3d at 1023; *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248, 106 S. Ct. 2505, 2510, 91 L. Ed. 2d 202 (1986). All reasonable doubts about the facts and all justifiable inferences are resolved in favor of the nonmovant. *Chapman*, 229 F. 3d at 1023; *Fitzpatrick v. City of Atlanta*, 2 F. 3d 1112, 1115 (11th Cir. 1993). A dispute is genuine "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson*, 477 U.S. at 248, 106 S. Ct. at 2510; *Chapman*, 229 F. 3d at 1023. If the evidence is merely colorable, or is not significantly probative, summary judgment may be granted. *Anderson*, 477 U.S. at 249; 106 S. Ct. at 2511.

The method used by the party moving for summary judgment to discharge its initial burden depends on whether that party bears the burden of proof on the issue at trial. *See Fitzpatrick*, 2 F. 3d at 1115-17, citing *United States v. Four Parcels of Real Property*, 941 F. 2d 1428 (11th Cir. 1991) (*en banc*). If the moving party bears the burden of proof at trial, then it can meet its burden on summary judgment only by presenting positive evidence that demonstrates the absence of a genuine issue of material fact; i.e., facts that would entitle it to a directed verdict if not controverted at trial. *Fitzpatrick*, 2 F. 3d at 1115. Once the moving party makes such a showing, the burden shifts to the nonmoving party to produce significant, probative evidence demonstrating a genuine issue for trial.

If the moving party does not bear the burden of proof at trial, it can satisfy its initial

burden on summary judgment in either of two ways. First, the moving party may produce affirmative evidence negating a material fact, thus demonstrating that the nonmoving party will be unable to prove its case at trial. Once the moving party satisfies its burden using this method, the nonmoving party must respond with positive evidence sufficient to resist a motion for a directed verdict at trial.

The second method by which the moving party who does not bear the burden of proof at trial can satisfy its initial burden on summary judgment is to affirmatively show the absence of any evidence in the record in support of a judgment for the nonmoving party on the issue in question. This method requires more than a simple statement that the nonmoving party cannot meet its burden at trial but does not require evidence negating the nonmovant's claim; it simply requires the movant to point out to the court that there is an absence of evidence to support the nonmoving party's case. *Fitzpatrick*, 2 F. 3d at 1115-16. If the movant meets its initial burden by using this second method, the nonmoving party may either point to evidence in the court record, overlooked or ignored by the movant, sufficient to withstand a directed verdict, or the nonmoving party may come forward with additional evidence sufficient to withstand a directed verdict motion at trial based on the alleged evidentiary deficiency. However, when responding, the nonmovant can no longer rest on mere allegations, but must set forth evidence of specific facts. *Lewis v. Casey*, 518 U.S. 343, 116 S. Ct. 2174, 135 L. Ed. 2d 606 (1996), *citing Lujan v. Defenders of Wildlife*, 504 U.S. 555, 561, 112 S. Ct. 2130, 2137, 119 L. Ed. 2d 351 (1992).

### III.   ANALYSIS

The material facts in this case are not in dispute. Defendant argues that it is entitled to summary judgment on both of Plaintiff's claims.

1.      **Negligence**

To proceed with a claim of negligence, plaintiffs are generally required to present substantial evidence of the following elements: (1) duty, (2) breach of duty, (3) proximate cause, and (4) injury. *Albert v. Hsu*, 602 So. 2d 895, 897 (Ala. 1992) (citing *John R. Cowley & Bros., Inc. v. Brown*, 569 So. 2d 375, 379 (Ala. 1990); *Christian v. Kenneth Chandler Const. Co., Inc.*, 658 So. 2d 408, 410 (Ala. 1995). Substantial evidence is "evidence of such weight and quality that fair-minded persons in the exercise of impartial judgment can reasonably infer the existence of the fact sought to be proved." *Christian*, 658 So. 2d at 410. Whether Defendant owed a duty to Plaintiff is a question of law for the court to decide. *Jones v. Newton*, 454 So. 2d 1345, 1348 (Ala. 1984); *Rutley v. Country Skillet Poultry Co.*, 549 So. 2d 82, 85 (Ala. 1989); *John R. Cowley & Bros.*, 569 So. 2d at 379. "Where there is no duty, there can be no negligence." *Albert*, 602 So. 2d at 410 (quoting *Rose v. Miller & Co.*, 432 So. 2d 1237, 1238 (Ala. 1983)). "A premises owner ... owes no duty to protect invitees from all conceivable dangers they might face while on the premises because '[t]he owner of a premises ... is not an insurer of the safety of his invitees.' In other words, '[t]here is no presumption of negligence which arises from the mere fact of an injury to an invitee.'" *Jackson v. Wal-Mart Stores, Inc.*, 2010 WL 320491, * 2 (S.D. Ala., Jan. 20, 2010), quoting *Ex parte Harold L. Martin Distrib. Co.,* 769 So. 2d 313, 314 (Ala. 2000), and *Tice v. Tice*, 361 So. 2d 1051, 1052 (Ala. 1978).

In this case, Defendant's duty to Plaintiff depends on whether Plaintiff was in Defendant's store as a trespasser, a licensee, or an invitee. *Edwards v. Intergraph Services Co., Inc.*, 4 So. 3d 495, 500 (Ala. Civ. App. 2008) (citing *Christian*, 658 So. 2d at 410); *Ex parte Mountain Top Indoor Flea Market, Inc.*, 699 So. 2d 158, 161 (Ala. 1997); *Sisk v. Heil Co.*, 639

So. 2d 1363, 1365 (Ala.1994). The parties do not dispute that Plaintiff was an invitee because she was on Defendant's premises "for some purpose that materially benefitted" Defendant, i.e., to purchase beverages from Defendant.[5] *Davidson v. Highlands United Methodist Church*, 673 So. 2d 765, 767 (Ala. Civ. App. 1995).

Defendant's duty, as a store owner, to Plaintiff, as an invitee, was to exercise ordinary and reasonable care in keeping its premises in a reasonably safe condition. *Prentiss v. Evergreen Presbyterian Church*, 644 So. 2d 475, 477 (Ala. 1994); *McClendon v. Mountain Top Indoor Flea Market, Inc.*, 601 So. 2d 957 (Ala. 1992); *Winn-Dixie v. Godwin*, 349 So. 2d 37 (Ala. 1977); *May-Bilt, Inc. v. Deese*, 206 So. 2d 590 (Ala. 1967); *Tice v. Tice*, 361 So. 2d 1051 (Ala. 1978). If its premises was unsafe, Defendant had a duty to warn Plaintiff of any defects and dangers that were known to it, but unknown to Plaintiff. *Id*. The parties dispute whether Defendant knew or should have known of some defect that may have been present in the toilet, causing it to tip over, such that Defendant was under a duty to warn Plaintiff of the same.

The evidence of record suggests the following: (1) the toilet was not installed by Defendant, but had been in place for an unspecified length of time when Defendant acquired the store in April 2007; (2) nothing appears to be known about the toilet's history prior to Defendant's purchase of the store; (3) the toilet was the only toilet available to female customers and employees of Defendant, and was used multiple times each day; (4) during the three years prior between Defendant's purchase of the store and Plaintiff's injury, no complaint was ever reported to Defendant regarding the stability or safety of the toilet; (5) any complaint involving

---

[5] An invited social guest, on the other hand, is a licensee of the premises owner. Plaintiff's intent to purchase beverages as a customer of Defendant qualifies her as an invitee, not a licensee or social guest. *See Davidson, supra.*

the toilet's stability would have been reported to Kim Martin at Defendant's corporate office in Nashville, who would have forwarded the same to Steve Eckstein, the maintenance technician who performed repairs, as needed, on the toilet; and (6) Mr. Eckstein did not receive a request to repair the toilet's stability, or examine the toilet to ensure its stability, prior to Plaintiff's injury. (Price Dep. at 10, 25, 28, 33, 36; Edwards Dep. at 51-53, 59-60, 64-66, 73, 76-84; Eckstein Dep. at 16-17, 19-53, 70-73; McCullough Aff., doc. 31 Exh. D).

Premised on these facts, Defendant maintains that it neither knew nor should have known of a defect in the toilet, if there was any, such that it was under a duty to warn Plaintiff of the same. Hence, Defendant argues, Plaintiff cannot demonstrate that it breached its duty to her, and therefore, her negligence claim fails.

Defendant is correct that Plaintiff has offered neither evidence nor argument to the effect that Defendant knew or should have known that the toilet was defective or dangerous when Plaintiff was injured. She argues, however, that she may still avoid summary judgment on her negligence claim, even without proving notice. She points to two exceptions to the notice requirement. The first exception applies where Plaintiff demonstrates that Defendant affirmatively created a hazardous condition that led to her injury, through its own "active negligence." Such cases involve a defect that is created by the defendant, or its employees, in what would otherwise be a safe environment. *Edwards*, 4 So. 3d at 503; *Denmark v. Mercantile Stores, Inc., supra* (customer who tripped over a roll of plastic shopping bags was not required to establish store's actual or constructive knowledge of the hazard because the store's employees created the hazard); *Wal-Mart Stores, Inc. v. Rolin,* 813 So. 2d 861, 864 (Ala. 2001) (customer who tripped over a barbecue grill that was protruding from a box was not required to establish

store's actual or constructive knowledge of the dangerous condition when the store's employees created the dangerous condition); and *Wal-Mart Stores, Inc. v. McClinton*, 631 So. 2d 232, 234 (Ala. 1993) (customer who jammed his foot on a gun cabinet protruding into the store aisle was not required to establish store's actual or constructive knowledge of the hazardous condition when evidence indicated that hazardous condition was created by store's employees). The second exception applies if Plaintiff can establish that Defendant failed to reasonably inspect or maintain the toilet, such that it would have discovered a defect. *See Kmart v. Peak*, 757 So. 2d 1138 (Ala. 1999) (plaintiff presented evidence that the same set of automatic doors that injured him had previously caused injury to other customers, and the premises owner had failed to maintain the doors to prevent a recurrence).

    Plaintiff does not argue that Defendant affirmatively created, through its own active negligence, any defect in the toilet that might have caused it to tip over. The court, upon examining the record, finds no evidence that would support such an argument. Instead, Plaintiff argues that a question of material fact remains as to whether Defendant reasonably inspected or maintained the toilet. Defendant presents evidence that the toilet was used multiple times each day, and was cleaned at least twice every day. Plaintiff argues, however, that a jury could find that cleaning a toilet is not tantamount to inspecting the integrity of the bolts or the seal, or any other mechanism that could have contributed to the toilet's falling over. While this may be true, Plaintiff has not demonstrated that "reasonably inspecting" a toilet, particularly in the absence of any complaint or concerns expressed about the toilet's safety or stability, involves ensuring that it will not tip over. Steve Eckstein testified that during the three years prior to Plaintiff's injury, he was not informed of any complaints that the toilet was somehow unstable or otherwise unsafe,

including that the bolts on the toilet were broken or compromised, nor had he ever heard of a toilet tipping over during ordinary use. He also testified that the only other method of ensuring that a toilet will not fall over is to pull the toilet from its place and determine whether the flange, located underneath the base of the toilet, is intact. (Eckstein Dep. at 69-71). According to Mr. Eckstein, one may not simple look at a toilet to discover that the flange is broken. (*Id*. at 71). Mr. Eckstein testified as follows:

> Q: So, you can't tell me today whether or not the bolt was properly screwed into the floor?
>
> A: It doesn't screw into the floor.
>
> Q: Okay. How does it go in?
>
> A: It hooks under the flange.
>
> Q: So, you can't tell me if it was hooked into the flange, or under the flange, properly?
>
> A: No, I can't.
>
> Q: Typically, in your experience, if it's hooked properly it will not come undone, will it?
>
> A: Unless it breaks. Unless the flange breaks.
>
> Q: Now, if the flange breaks, does the toilet typically turn over?
>
> A: No.
>
> ******
>
> Q: So, you couldn't – so, in your opinion, if you sat on it and leaned one direction it wouldn't turn over, is that right?
>
> A: It might wobble. It won't tip over.

12

> Q: What are you basing that on?
>
> A: Just the number of toilets that I've dealt with. They're pretty stable even without bolts in them.

(Eckstein Dep. at 57-59). Plaintiff does not dispute any of this testimony, but argues simply that there *could* have been a complaint about the toilet's safety that was not recorded. However, Plaintiff offers nothing more than speculation to support this argument. Therefore, the court has no basis in either the record or in relevant case law, upon which to conclude that a reasonable inspection or maintenance of the toilet would have included checking its stability.

Plaintiff argues that she may still avoid summary judgment, without satisfying the notice requirement, under the reasoning of the Alabama Supreme Court in *Mims v. Jack's Restaurant*, 565 So. 2d 609 (Ala. 1990), and its progeny. These cases provide that, if the plaintiff establishes that her injury was caused by a defective fixture on the premises, as opposed to a slip-and-fall case involving a foreign substance on the floor, the question whether the defendant knew or should have known the fixture was defective is reserved for a jury. *See Mims*, 565 So. 2d at 610 (plaintiff who tripped over threshold at entrance to restaurant, and presented evidence that the threshold was loose and was missing two screws at the time of her injury, presented substantial evidence such that a jury should determine notice requirement); *Norris v. Wal-Mart Stores, Inc.*, 628 So. 2d 475, 478 (Ala. 1993) (where plaintiff presented substantial evidence that her injury was caused by ten-pound box of toothpaste that fell from upper shelf onto back of her head, jury should decide whether Defendant knew the shelves were defective or unreasonably dangerous); *Winn-Dixie Montgomery, Inc. v. Weeks*, 504 So. 2d 1210, 1211 (Ala. 1987) (child riding in shopping cart was injured when cart tipped over and child's cheek was impaled on wire sticking out of display rack;

jury should decide whether defendant knew or should have known of hazardous condition). In each of these cases, the plaintiffs were excused from demonstrating notice by the defendant simply by showing that their injuries were caused by a defect on the defendant's premises. Plaintiff here argues that the toilet tipping over is substantial evidence of a defect within the toilet, such that a jury should decide whether Defendant knew or should have known, and therefore warned her, of the defect.

Plaintiff makes no attempt to support her position that a toilet tipping over is, by itself, substantial evidence of that the toilet contained some unidentified, latent defect, such that Defendant should be liable in negligence for her injuries. The court has conducted significant research into this question and likewise finds no authority to support this argument. Significantly, Plaintiff presents no evidence as to what actually caused the toilet to tip over in the first place. It is undisputed that she was attempting to use the toilet in the ordinary manner, and that suddenly the toilet fell over. Plaintiff does not argue, however, that toilets simply fall over of their own volition, and the court would decline to accept such an argument. Plaintiff testified that her sister took pictures of the toilet the day Plaintiff was injured. (Pl. Dep. at 141). However, those pictures are not included in the record, nor is there any explanation for their absence. Instead, Plaintiff insists that some defect must have been present in the toilet for it to tip over, and that Defendant should be held responsible for her injuries. She does not explain her failure to investigate the cause of the toilet tipping over, though neither party disputes that she had an opportunity to do so.

As far as the court can see, based on the evidence before it, the toilet could have fallen over due to any number of causes, including a latent defect in the manufacture of the toilet. However, Plaintiff does not name the manufacturer of the toilet as a defendant to this action, or submit

evidence or argument to the effect that the manufacturer should not be liable for her injury. The incident might also be explained by a problem with the installation of the toilet, resulting in latent damage to the structure or stability of the toilet. However, Plaintiff does not name the installer as a defendant.

The court acknowledges several gaps in the record, including (1) the age of the toilet; (2) the prior history of the toilet, including when it was installed in the location where Plaintiff was injured and how long it had been in place before Plaintiff's injury; and, (3) who manufactured the toilet, how it was transported to the location where Plaintiff was injured, and whether the installation process could have created a latent defect in either the toilet or the flooring, thus compromising the future stability of the toilet. None of this information is provided in the record, nor does Plaintiff offer any explanation for its absence. Plaintiff cannot create a genuine issue of material fact by failing to offer evidence that was available to her by reasonable investigation of the facts relevant to her claim. Therefore, even construing what evidence there is in the light most favorable to Plaintiff, the court finds no basis in the record to conclude that Defendant specifically should be liable for Plaintiff's injuries. Accordingly, the court does not agree with Plaintiff that she has produced enough evidence to establish that Defendant was under a duty to warn her of any risk related to the toilet, in order to avoid summary judgment under *Mims* and its progeny.[6] This is particularly the case in light of the express proscription against courts presuming negligence where an invitee is injured on the defendant's property. *Jackson*, 2010 WL 320491 at * 2, *Ex parte Harold L. Martin Distrib. Co.,* 769 So. 2d at 314, and *Tice*, 361 So. 2d at 1052.

---

[6] Unlike the present case, in each of the cases cited that deal with a fixture, the nature of the defect or the cause of the injury was identified: *Mims* (a loose threshold), *McClinton* (a protruding gun cabinet), *Weeks* (a wire sticking out of a display rack, and *Norris* (a high shelf without a railing that would have prevented an item from sliding off). Accordingly, in this case, there is no issue for the jury to decide due to a lack of evidence.

Having found that Plaintiff has failed to demonstrate that Defendant either knew or should have known of any defect in the toilet, such that it was under a duty to warn her of the same, and that neither exception to the notice requirement applies to the facts of this case, the court concludes that Plaintiff has not established that Defendant breached its duty to her. Therefore, she has failed to present a prima facie case of negligence. Defendant's motion for summary judgment on this claim is due to be granted.

### 2. Wantonness

In her Complaint, Plaintiff alleges that Defendant acted wantonly in failing to properly maintain the premises and by failing to warn Plaintiff of known dangers or dangers which should have been known to it regarding the stability of the toilet. (Doc. 1, Exh. A, ¶ 10). "Wantonness involves the conscious doing of some act or the omission of some duty, while knowing of the existing conditions and being conscious that, from doing or omitting to do an act, injury will likely or probably result." *Lilya v. Greater Gulf State Fair, Inc.*, 855 So. 2d 1049, 1056 (Ala. 2003); *Alfa Mut. Ins. Co. v. Roush*, 723 So. 2d 1250, 1256 (Ala. 1998) ("'Wantonness' is statutorily defined as '[c]onduct which is carried on with a reckless or conscious disregard of the rights or safety of others.' ALA. CODE 1975, § 6-11-20(b)(3). 'Wantonness' has been defined by this Court as the conscious doing of some act or the omission of some duty, while knowing of the existing conditions and being conscious that, from doing or omitting to do an act, injury will likely or probably result. *Bozeman v. Central Bank of the South*, 646 So. 2d 601 (Ala. 1994).").

To maintain an action for wantonness, Plaintiff must demonstrate that Defendant "participated in conduct characterized by 'a reckless or conscious disregard of the rights or safety of others.'" *Gibson v. Norfolk Southern Corp.*, 878 F. Supp. 1455, 1463 (N.D. Ala. 1994) (quoting

16

CODE OF ALABAMA 1975 § 6-11-20(b)(3)).  Plaintiff need not establish that Defendant intended to cause her injury in order to prevail on her wantonness claim.  *Id*.  She may avoid summary judgment on this claim by providing evidence of "an inadvertent act or failure to act, when the one acting or failing to act has knowledge that another is probably imperiled by the act or failure to act and the act or failure to act is in reckless disregard of the consequences."  *Hamme v. CSX Transportation, Inc.,* 621 So. 2d 281, 283 (Ala. 1993) (internal citations omitted).

      Common to each of these definitions of wantonness is the requirement that Plaintiff demonstrate both knowledge of the risk of harm, and conscious disregard of that risk, by the defendant.  In her opposition brief, however, Plaintiff not only fails to argue that Defendant knew of and consciously disregarded the risk, she fails to offer any argument in defense of her wantonness claim altogether.  Accordingly, Defendant's Motion for Summary Judgment is due to be granted as unopposed as to Plaintiff's wantonness claim.  Having examined the record in full, however, the court also finds that Defendant is entitled to judgment as a matter of law on the merits as to this claim, owing to an utter lack of any evidence establishing that Defendant knew the toilet was dangerous and recklessly disregarded the same.

## IV.    CONCLUSION

      Due to the lack of evidence that Defendant knew or should have known that the toilet was in some unidentified way unsafe at the time of Plaintiff's injury, and because neither exception to the notice requirement applies to this case, the court concludes that Plaintiff has not established her negligence claim against Defendant.  Having also found no evidence to support Plaintiff's argument that Defendant knew and recklessly disregarded the risk of harm to Plaintiff, the court finds that Plaintiff has failed to demonstrate wantonness on the part of Defendant.

Accordingly, Defendant is entitled to judgment as a matter of law as to both claims, and its Motion for Summary Judgment is due to be granted. A separate Order will be entered contemporaneously herewith.

**DONE** this 25th day of January, 2011.

_____
**JOHN E. OTT**
United States Magistrate Judge